UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X    Index No. 19-cv-1121
LANDSTAR, INC., a Nevada corporation;
                                Plaintiff


        *-against-*


HUBAI CHUGUAN INDUSTRTY CO., LTD., a Chinese corporation.
                                Defendant,


and MADISON STOCK TRANSFER, INC., a New York corporation
                                Nominal Defendant


_____X    Hon. Cheryl Pollack


**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

M. David Sayid, Esq.
Sayid and Associates LLP
308 Spring Lane
Haworth, NJ 07641
Tel:  (212) 262- 6188

Dated: June 3, 2019

| **Table of Contents** | |
|---|---|
| | Page |
| Preliminary Statement | 2 |
| Governing Law | 3 |
| Standard for Summary Judgment | 4 |
| **Arguments** | 5 |
| 1. The Statute of limitations defense. | 5 |
| 2. Perpetual vs. Indefinte agreements. | 6 |
| 3. The defense of laches is with merit in the present case | 7 |
| 4. The possible attempt by Plaintiff to claim defense of failure of consideration is unsupported. | 8 8 |
| 5. There is no affirmative act pled or in evidence preventing Plaintiff from brining suit | 8 |
| 6. The Plaintiff admitted in their Disclosure and Annual Report filings that Defendant was the beneficial owner of the Shares. | 9 |
| **Conclusion** | 12 |
| | |
| **Table of Authorities & Cases** | |
| Nicholas Laboratories Limited v. Almay Inc., 720 3F.Supp. 1015 (SDNY 1989 | 6 |
| Citing Payroll express Corp. v. Aetna casualty and surety company, 659 F.2nd 285, 292 (Second Circuit 1981)) | 7 |
| Ikelionwu v. United States, 150 F.3d 233, 237 (2d Cir. 1998) | 7 |
| Eppendorf-Netheler-Hinz GmbH v Nat'l Sci. Supply Co., 14 F App'x 102, 105 [2d Cir 2001]. | 7 |
| N.Y. Civ. Prac. L&R section 213; contracts- written: six (6) years; Oral: six (6) years - N.Y. Civ.Prac. L&R section 213) | 6 |
| **Exhibits** | |
| 1. Exchange Agreement between YellowSea Management Inc. and LandStar Inc. dated October 2008 – hereinafter Exhibit 1 | 5 |
| 2. Copy of LandStar Inc. Certificate issued to Hubai Chuguan Industry Ltd. for 1.5 billion shares of LandStar Inc. - hereinafter Exhibit 2 | 5 |
| 3   Copy of LandStar's 2017 Annual Report certified by current CEO, Jason Remillard -     hereinafter Exhibit 3 | 11 |

The Defendant, Hubai Chuguan Industry Co., Ltd., by and through their counsel, Sayid and Associates LLP, respectfully submit this memoranda of law in support of the Defendant's Motion for Summary Judgment, which is submitted by the Defendant

**PRELIMINARY STATEMENT**

In the instant case, Plaintiff is moving for a declaratory judgement and breach of contract arising out of the alleged disputed ownership of certain shares of LandStar stock. Madison Stock Transfer, the Nominal Defendant ("Madison"), maintains the ownership of the shares of LandStar stock and is evidenced on the shareholder list maintained by Madison, Nominal Defendant.

In the matter at bar, 1) the Shares were issued pursuant to a contract executed in 2008, and the Plaintiff is pursuing a breach of contract issue. That means the New York statute of limitations (six (6) years) have ran; almost twice – eleven (11) years. Plaintiff attempts to beguile the Court into a legal anathema of a possible perpetual agreement to vanquish the reality that the statute of limitations already tolled or that the Defendants statute of limitation defenses are without merit. While it is an interesting concept, it does not prove the Plaintiffs underlying claims, it does not demonstrate there are no material facts remaining to be resolved, and it attempts to overturn generations of legal bedrock and common sense by asserting an abandoned agreement could be possibly perpetual.

**Governing Law**

This case is governed under New York law pursuant to the findings of the court that the parties do not dispute that New York law applies in this case. Indeed, the party seem to agree on its application, as both make arguments based on New York's contract laws and policies.

Therefore, the court will apply New York law.

**Standard for Summary Judgment**

Rule 56 (a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.[1] Thus, "[a] motion for summary judgment may be properly granted… Only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warned the entry of judgment for the moving party as a matter of law."[2] "The function of the District Court considering a motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."[3] "[I]n determining whether summary judgment is appropriate, the court must construe the facts in the light most favorable to the nonmoving party and… Resolve all ambiguities and draw all reasonable inferences against the movant."[4] The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine issue of material fact."[5] "A fact is material if it might affect the outcome of the suit under the governing law."[6] If a summary judgment movant satisfies his initial burden then the adverse party must set forth specific facts showing that there is a genuine issue for trial.[7] A dispute is genuine if the evidence is such that a reasonable jury could return a verdict

---

[1] F.R.C.P. 56 (a)
[2] Rogoz v. City of Hartford, 796 F.3d 236, 245 (2nd Cir. 2015)
[3] Rogoz v. City of Hartford, 796 F.3d 236, 245 (2nd Cir. 2015)
[4] Kuhbier v. McCartney, Verrino & Rosenberry Vested Producer Plan, --F. Supp. 3d-- № 14 Civ. 888 (KMK), 2017 WL 933126 at 7 (S.D.N.Y. Mar. 8 2017)
[5] ICC Chem. Corp. v. Nordic Tankers Trading a/s, 186 F.Supp. 3d 296, 301 (S.D.N.Y. 2016)
[6] Royal Crown Day Care L.L.C. v. Cep't of Health & Mental Hygiene of City of New York, 746 F.3d 538, 544 (2ns Cir. 2014)
[7] Anderson v. Liberty Lobby, Inc., 477 US 242, 248 (1986)

for the nonmoving party.[8] To defeat summary judgment, nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts and they may not rely on conclusory allegations or unsubstantiated speculation.[9] Put another way: "at the summary judgment stage, the nonmoving party must offer some hard evidence showing that its version of the events is not wholly fanciful."[10]

## ARGUMENTS

1. **The Statute of limitations defense**

The Plaintiff only argument that Plaintiff could possible state is that that the agreement between the parties executed in "approximately ten years ago" (Plaintiff's Complaint page 2, para. 13., see Exhibit 1, copy of Agreement dated October 2008), is somehow a "perpetual agreement". Thus, plaintiff would be attempting to create a legal fiction transmogrifying a run-of-the-mill exchange agreement into a 'perpetual' agreement. The Plaintiff states in their Complaint "that approximately ten years ago a share certificate for !,500,000,000 shares of LandStar common stock was prepared, though there in no evidence it was ever actually issued to or delivered to Chuguan."

Defendants, in their Verified Answer have stated that the Shares were issued properly pursuant to an Exchange Agreement executed in 2008 ("approximately ten years ago"),and were in fact delivered to Defendant in China (see Defendant's Exhibit 2, copy of LandStar Certificate for 1,500,000,000) . Through their own admission, Plaintiff has stated that the transaction is over ten years ago.   Plaintiff may attempt to have the court believe that the agreement that created the issuance of the Shares was a perpetual agreement, but no such animal exists.   Plaintiff would further have the court believe that the defendant's potential failure to produce evidence is proof positive of the

---

[8] Negrete v. Citibank, N.A., --F. Supp. 3d -- № 15 Civ. 7250 (RWS), 2017 WL 758516 at 6 (S.D.N.Y. Feb.27, 2017)
[9] Bermudez v. City of New York, 790 F.3d 368, 373-74 )2nd Cir. 2015)
[10] Jeffreys v. City of New York, 426 F.3d 549, 544 (2nd Cir. 2005)

Plaintiff's claims but Defendant is in possession of the Exchange Agreement executed by the Plaintiff and the Defendant in October of 2008.

The New York statute of limitations of six (6) years and the recordkeeping requirements of seven (7) years are sequential for a reason (Contracts: written: six (6) years (N.Y. Civ.Prac. L&R section 213; Oral: Six (6) years N.Y. Civ. Prac. L&R section 213), do so at their own peril.

If the Plaintiffs had not slept on their rights for 10 years, the odds are that most of the evidentiary objections would be put to bed; one way or another. But that is not what happened. The Plaintiffs try to bring their claim well after the expiration of the statute of limitations, and after any prudent record keeping requirements, and now, blames circumstances, prior management, the Defendant for not having any records.

**2. Perpetual vs. Indefinite agreements**

The Plaintiff's sole forlorn hope in keeping the litigation alive is for the court to believe that the agreements between the Plaintiffs and the Defendant are somehow, perpetual.   From the case law, the Plaintiffs can reflect that perpetual agreements are abhorrent. There is no dicta in any of the agreements establishing an indefinite contract where periods renew.  There is not one scintilla of evidence suggesting that either of the parties did anything other than prepare these agreements for a specific purpose and for a specific time, certainly not perpetual.

In Nicholas laboratories Limited v. Almay Inc., 720 3F.Supp. 1015 (SDNY 1989), where the court was speaking to a continuing agreement concerning a trademark license that specifically

stated "… And thereafter for successive periods of 5 fiscal years…" (Nicholas at 1017.)   The Nicholas court went on to clarify the distinguishment between "perpetual" and and "indefinite" contracts. A perpetual contract runs without a fixed end or without provision for its termination. An indefinite contract runs without a fixed end but contains provisions under which the contract might terminate at any time. The New York courts maintain a policy against the enforcement of perpetual contracts on the grounds that great hardship may be worked against one of the parties if the circumstances surrounding the contract substantially change. (Nicholas at 1018 Citing Payroll express Corp. v. Aetna casualty and surety company, 659 2nd 285, 292 (Second Circuit 1981).

   3.  **The defense of laches is with merit in the present case.**

   The instant litigation has not even begun discovery.   It appears that the Plaintiff is shifting the burden of discovery. This is the very reason for, and textbook definition of, laches.

   An eleven (11) year delay, without any mitigating circumstances pled or even an explanation, is the embodiment of laches and why no evidence of accord and satisfaction and lack of privity has been recovered. The doctrine of laches is here for this reason.

   Laches "is an equitable defense that bars a plaintiff's . . . claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant." Ikelionwu v. United States, 150 F.3d 233, 237 (2d Cir. 1998) "Laches is based on the maxim . . . 'equity aids the vigilant, not those who sleep on their rights.'"(Eppendorf-Netheler-Hinz GmbH v Nat'l Sci. Supply Co., 14 F App'x 102, 105 [2d Cir 2001].)

**4. The attempt by Plaintiff to claim defense of failure of consideration is unsupported.**

There has been no opportunity to develop evidence to support a failure of consideration, and there may be no such evidence based upon Plaintiff's ten (10) year delay which facilitated the defendants' laches assertion. To further compound matters, the Plaintiff- company itself has changed management several times. Pleading in the alternative is the only prudent course of action.

**5. There is no affirmative act plead or in evidence preventing Plaintiff from bringing suit.**

In order to toll the Statute of Limitations, the law states that a Defendant must do something, something affirmative, to stop Plaintiff from bringing suit for equitable tolling or estoppel to apply. Even if the Plaintiff could not find the Defendant, the Plaintiff could still have filed suit. No affirmative act of the Defendant was plead to have somehow prevented Plaintiff from filing suit. In the instant, Plaintiff did not even plead the Defendant did something affirmative to stop the Plaintiff from filing suit; regardless if they could locate the Defendant or not. If the Plaintiff could not find the Defendant, nothing prevented the Plaintiff from filing suit and obtaining a default judgment, or otherwise tolling the statute of limitations. "Under New York law, the doctrines of equitable tolling for equitable estoppel may be invoked to defeat a statute of limitations defense when the Plaintiff was induced by fraud, misrepresentations deception to refrain from filing a timely action."11.

11. (Abbas v. Dixon, 480 F.3d 636, 642 (2nd Cir. 2007).

"Such fraud, misrepresentations, or deception must be affirmative and specifically directed at preventing the Plaintiff from bringing suit…."12

### 6. **The Plaintiff's admitted in their Disclosure and Annual Report filings that Defendant had good and lawful title to the Shares.**

The Plaintiff, through their own certification, in the years 2015, 2016, and 2017 stated in the Plaintiff's own Disclosures filings and Plaintiff's own Annual Report filings that Defendants were the beneficial owners of the Shares in question, thus, :

**In 2015:** The Plaintiff's disclosed in their OTC Pink Basic Disclosure for the period ending **December 31, 2015**, Section 8 titled, Officers, Directors and Control Persons, Subsection C states:

Hubai Chuguan Industry Co. Ltd. – Long Zegui - 1,500,000,000 shares of common stock – 40.71% ownership, Suite 1306, Building D Jinyou Mansion, 12 Madianyumin Road, Chaoyang District, Beijing.

This 2015 OTC Pink Basic Disclosure filing was Issuer Certified by William Alessi, CEO of the Plaintiff in 2015, who stated in his Issuer Certification that:

"1. I have reviewed this annual disclosure statement of Landstar, Inc.
 2. Based on my knowledge, this disclosure statement does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this disclosure statement; and
3. Based on my knowledge, the financial statements, and other financial information included or incorporated by reference in this disclosure statement, fairly present in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in this disclosure statement.

Dated: December 2, 2017."

---

12. Twersky v. Yeshiva University, 993 F. Supp. 2d 429, 442 (S.D.N.Y.) aff'd 579 F. Appendix 7 (2nd Cir. 2014)

**In 2016:**  The Plaintiff disclosed in their OTC Pink Basic Disclosure for the period ending **December 31, 2016**, Section 8 titled, Officers, Directors and Control Persons, Subsection C states Beneficial Shareholders,:

Hubai Chuguan Industry Co. Ltd. – Long Zegui - 1,500,000,000 shares of common stock – 40.71% ownership, Suite 1306, Building D Jinyou Mansion, 12 Madianyumin Road, Chaoyang District, Beijing.

This 2016 OTC Pink Basic Disclosure filing was Issuer Certified by William Alessi, CEO of the Plaintiff in 2016, who stated in his Issuer Certification that :

"1. I have reviewed this annual disclosure statement of Landstar, Inc.
  2. Based on my knowledge, this disclosure statement does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this disclosure statement; and

3. Based on my knowledge, the financial statements, and other financial information included or incorporated by reference in this disclosure statement, fairly present in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in this disclosure statement.                        Dated: December 2, 2017"

**In 2017**:   The Plaintiff disclosed in their Annual Report for the period ending **December 31, 2017,** Section 8 titled, Officers, Directors and Control Persons, Subsection B states Beneficial Shareholders,:

Hubai Chuguan Industry Co. Ltd. – Long Zegui - 1,500,000,000 shares of common stock – 38% ownership, Suite 1306, Building D Jinyou Mansion, 12 Madianyumin Road, Chaoyang District, Beijing.

**This 2017 Annual Report filing was Issuer Certified by Jason Remillard, the current CEO of the Plaintiff, who stated in his Issuer Certification (dated May 3, 2018), that :**

**"1. I have reviewed this Annual Report of Landstar, Inc.
  2. Based on my knowledge, this disclosure statement does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this disclosure statement; and**

  **3. Based on my knowledge, the financial statements, and other financial information included or incorporated by reference in this disclosure statement, fairly present in all material respects the financial condition, results of operations and cash flows of the issuer as of, and for, the periods presented in this disclosure statement.**

**Dated: May 3, 2018."**
**(See Exhibit 3 – Copy of Plaintiff LandStar 2017 Annual Report, certified by Jason Millard, CEO, LandStar, Inc.)**

Accordingly, from the year end filing of 2015 and 2016, it is very evident that Landstar and its previous management (William Alessi, previous CEO) were fully aware of the existence of the beneficial shareholder, Chuguan Industry Co., Inc. and the Chuguan security position of 1,500,000,000 shares of Landstar and that is the clear reason why the Defendant's name is placed in the Plaintiff's Disclosure filing as well as Plaintiff's Annual Report, as the beneficial owner of 1,500,000,000 of LDSR Shares.

    It is disingenuous of the Plaintiff to now state that they know nothing about the Defendant's beneficial ownership of the 1,500,000,000 shares of LDSR.

    Furthermore, it is crystal clear from the year end filing of the 2017 Annual Report, that the current management (Jason Remillard, Landstar's current CEO) is fully aware of the existence of the beneficial shareholder, Hubai Chuguan Industry Co., Inc. and the Chuguan security position of 1,500,000,000 shares of Landstar, through Landstar's disclosures and Issuer Certification dated May 3, 2018.

## **CONCLUSION**

The statute of limitations never tolled for the Plaintiff. In 2008, when the parties exchanged agreements and the certificate was forwarded to China in 2009, the only possibility that plaintiff can state is that the agreement executed in 2008 was perpetual. Plaintiff would have the court believe that the agreement is a perpetual agreement, but no such animal exists.

Plaintiff would further have the court believe that the defendant's failure to produce evidence is proof positive of the plaintiff's claims. The New York statute of limitations of 6 years and the recordkeeping requirements of 7 years are sequential for a reason.

If a plaintiff timely brings their claims, the defendants are expected to keep records for one year longer. If the plaintiffs have slept on their rights for eleven (11) years, they do so at their own peril and are now seeking a declaratory judgment.

If the plaintiffs had not slept on their rights for 11 years, the odds are that most of the evidentiary objections would be put to bed; one way or another. But that is not what happened. The plaintiffs try to bring their claim after the expiration of the statute of limitations, and after any prudent record keeping requirements, and now blames the defendant for not having any records. The plaintiff's sole forlorn hope in keeping the litigation alive is for the court to believe that the agreements between the plaintiffs and the defendant are possibly perpetual. The Nichols case clearly states that perpetual agreements are abhorrent. There is no dicta in any of the agreements establishing an indefinite contract where periods renew. There is not one scintilla of evidence suggesting that either of the parties did anything other than prepare the agreements, and properly issue the Shares.

Accordingly, from the year end filing of 2015, 2016 and 2017, it is very evident that Landstar and its previous management (William Alessi, previous CEO) were fully aware of the existence of the beneficial shareholder, Chuguan Industry Co., Inc. and the Chuguan security position of 1,500,000,000 shares of Landstar and that is the clear reason why the Defendant's name is placed in the Plaintiff's Disclosure filing as well as Plaintiff's Annual Report, as the beneficial owner of 1,500,000,000 of LDSR Shares.

It is disingenuous of the Plaintiff to now state that they know nothing about the Defendant's beneficial ownership of the 1,500,000,000 shares of LDSR.

**THEREFORE**, it is respectfully requested that this Court grant Defendant's motion for summary judgment.

Dated:   June 3, 2019

Haworth, New Jersey

Respectfully Submitted,

By: M. David Sayid, Esq.
Sayid and Associates LLP
308 Spring Lane
Haworth, New Jersey 07641
Tel:(212-262-6188